**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **ROY BROWN**,<br>Plaintiff,<br><br>v.<br><br>**LATIN AMERICAN MUSIC CO.**,<br>Defendant. | **CIVIL CASE NO.**: 3:24-cv-01523 (MAJ) |

**COUNTERCLAIM-PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENTAND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

Comes now Counterclaim-Plaintiffs Latin American Music Co. ("LAMCO") and Consuelo Corretjer ("Consuelo"), through the undersigned attorneys, and respectfully present their Statement of Material Facts in Support of their Motion for Summary Judgment:

1. Juan Antonio Corretjer is the author of the 13 poems defined as the "Corretjer Works" in LAMCO's Counterclaims. (ECF 44 ¶¶ 3, 16, 42; ECF 48 ¶¶ 3, 16, 42).
2. The Corretjer Works are original works of authorship fixed in tangible mediums of expression. (ECF 44 ¶ 42; ECF 48 ¶ 42¶).
3. Counterclaim-Defendant Roy Brown ("Brown") set the Corretjer Works to music. (ECF 44 ¶ 3; ECF 48 ¶ 3).
4. Twelve of the 13 Corretjer Works were first disseminated in books without copyright notices prior to January 1, 1978. (Declaration of Alberto Suarez ("Suarez Dec."), ¶ 3, Ex. A (LAMCO Answers to Brown Interrogatories, No. 15 (at 12)).

5. The work *Boricua en la Luna* is an unpublished work. (*Id.*, No. 14 (at 12)). Brown does not contend that *Boricua en la Luna* is in the public domain. (Declaration of Scott J. Sholder ("Sholder Dec.") ¶ 3, Ex. A (Brown Answers to LAMCO Interrogatories at No. 6).

6. Corretjer, a poet and journalist, was subject to political persecution throughout his lifetime as an activist for Puerto Rican independence, including being followed and surveilled, jailed multiple times, and the victim of several attempts on his life. (*Id.*, No. 17 (at 13-16); Suarez Dec. ¶ 4, Ex. C (LAMCO000143-44 at 0143)).

7. Corretjer circulated the poem "Distancias" as a handwritten pamphlet in 1957. (Suarez Dec. Ex. A, No. 14 (at 11) & No. 17 (at 14); Sholder Dec. ¶ 1, Ex. B (BROWN PRODUCTION 029-035)).

8. Corretjer circulated the book *Yerba Bruja* in 1957, which includes the works "Inriri Cahuvial," "El Hijo," "Ayuburi," "Serenata," "En la vida todo es ir," "Andando de noche sola," and "Ahora Me Despido" (ECF 65-2; Suarez Dec. Ex. A, No. 17 (at 14); Sholder Dec. ¶ 4, Ex. C (BROWN PRODUCTION 037-046, at 45); Suarez Dec. Ex. B (USCO Deposit Copy of *Yerba Bruja*) at 24, 25, 50, 79, 83, 85, 89).

9. Corretjer shared the above works only among a limited group of people that were interested in and sympathetic to his ideas. Suarez Dec. Ex. A, No. 17 (at 14).

10. In the 1960s, Corretjer produced several literary works in limited editions which he also shared only with a small group of people who sympathized with his philosophies. (*Id.*, No. 17 (at 15)).

11. Corretjer circulated the book *Alabanza a la Torre de Ciales* in 1965, which includes the work "Oubau Moin." (Sholder Dec. ¶ 5, Ex. D (Alabanza en la torre de ciales

complete.pdf, produced via email by Brown's counsel on October 31, 2025, at 21) & Ex. E (BROWN PRODUCTION 049-051)).

12. Corretjer circulated the book *Pausa para el Amor* in 1967, which includes the work "Dia Antes" (Suarez Dec. Ex. A, No. 17 (at 14); Sholder Dec. ¶ 6, Ex. F (BROWN PRODUCTION 052-56, at 053-55)).

13. These titles were all self-produced by Corretjer and a small group of friends and Corretjer exercised sole control over access to them. (Suarez Dec. Ex. A, No. 17 (at 15)).

14. Copies were only circulated among Corretjer's small group of friendly artists, professors, and intellectuals, all of whom were politically aligned with Corretjer and favored Puerto Rico's independence. (*Id.*).

15. To LAMCO's knowledge, most if not all surviving copies of these literary works are few and far between and are part of private collections. (*Id.*)

16. Corretjer never gave explicit permission for further reproduction of the titles in question. (*Id.*).

17. Given the prevailing political and cultural climate, there would have been an implicit and generally understood prohibition on widespread dissemination, even absent explicit statements in that regard. (*Id.*)

18. During the 1970s, Corretjer produced other works, including a limited publication of *Construcción del Sur* (1972), which includes the works "En las Aguas del Inabón, El Nombre (Inabon Yunes)," and "Diana de Guilarte." (*See* ECF 65-4 at 6; Sholder Dec. Ex. G (BROWN PRODUCTION 014-028 at 019-021)).

19. Corretjer also only shared these works with a small group of people interested in and sympathetic to his ideas. (Suarez Ex. A, No. 17 (at 16)).

20. The Corretjer Works constitute "grey literature," a term used to describe material produced outside of traditional publishing and distribution channels. (*Id.*)

21. Grey literature is characterized by small print runs. (*Id.*)

22. Corretjer also often shared his works as small-run pamphlets—a format usually used to disseminate political ideas that float under the radar to a select group of people without the intention of widespread distribution. (*Id.*).

23. Plaintiff is aware of the political persecution experienced by Corretjer, which he referenced in a 2020 interview. (Suarez Dec. Ex. C (LAMCO000143-LAMCO000144) at 143.))

24. Plaintiff testified in a 2005 deposition that Corretjer gave him some of his books as gifts. (Sholder Dec. Ex. H (2005 Brown Deposition Transcript) at 86:19-87:6; Suarez Dec. Ex. A, No. 17 (at 17)). When asked if he ever purchased a Corretjer book in a bookstore, Plaintiff could not say that he did. (Sholder Dec. Ex. H (2005 Brown Deposition Transcript) at 88:20-25; Suarez Dec. Ex. A, No. 17 (at 17)).

25. When the titles at issue were released, they were not sold in bookstores and could only be procured from Corretjer. (Suarez Dec. Ex. A, No. 17 (at 17)).

26. LAMCO registered the copyright to the book *Yerba Bruja*, which contains the Corretjer poems at issue *Ahora Me Despido* and *Serenata*. (Suarez Dec. ¶ 5, Ex. D (LAMCO115-116; the "'339 Registration")).

27. LAMCO registered the copyright to the three Corretjer poems at issue *Ahora Me Despido, Serenata,* and *Inabón Yunez* (Suarez Dec. ¶ 6, Ex. E (LAMCO113-114; the "'742 Registration")).

28. The ‘339 Registration contains two errors. First, it lists the “year of completion” of the book *Yerba Bruja* as 1985, but *Ahora Me Despido* and *Serenata* were both created before 1957. (*Compare* Suarez Dec. Ex. E *with* Suarez Ex. A, No. 13 (at 11)).

29. Second, it lists the date of first publication as 2006, but the first *limited* publications of *Ahora Me Despido* and *Serenata* and of the book *Yerba Bruja* were in 1957. (*Compare* Suarez Dec. Ex. E *with* Suarez Dec. Ex. A, No. 14 (at 11-12)).

30. The ‘742 Registration contains two errors. First, it lists the “year of completion” for *Ahora Me Despido, Serenata,* and *Inabón Yunez*, as 1978, but *Ahora Me Despido* and *Serenata* were both completed before 1957, and *Inabón Yunez* was completed before 1972. (*Compare* Suarez Dec. Ex. E *with* Suarez Dec. Ex. A, No. 13 (at 11)).

31. Second, it lists the date of “first publication” as January 1, 1978, but the first *limited* publications of *Ahora Me Despido* and *Serenata* were in 1957, and the first *limited publication* of *Inabón Yunez* was 1972 (*Compare* Suarez Dec. Ex. E *with* Suarez Dec. Ex. A, No. 14 (at 11-12)).

32. The errors contained in the ‘339 Registration and the ‘742 Registration were not made with knowledge but rather were inadvertently included based on LAMCO’s misunderstanding of USCO registration practices, rules, and conflicting USCO guidance at the time. (Declaration of Luis Raul Bernard “Bernard Dec.” at ¶¶ 3-5).

33. Consuelo worked with LAMCO to register the copyright in *Boricua en La Luna*. (Declaration of Consuelo Corretjer (“Corretjer Dec.”) ¶¶ 3-5, Ex. A (LAMCO000117; the “‘059 Registration”); Suarez Dec. ¶ 8, Ex. F).

34. LAMCO registered the Corretjer Works “Oubao Moin,” “Inriri Cahuvial,” “El Hijo,” “Andando de noche sola,” “Dia Antes,” “En la vida todo es ir,” “Distancias,”

"Boricua en la Luna," "Ayuburi," "Diana de Guilarte," and "Inabon Yunes," "De Ciales Soy." (Suarez Dec. ¶ 8, Ex. F (LAMCO000106; the "'275 Registration")).

35. The '059 Registration contains two errors. First, *Boricua en la Luna* was completed in 1980 but the '059 Registration lists the date of completion as 1981. (*Compare* Suarez Ex. A, No. 13 (at 11) *with* Corretjer Dec. Ex. A).

36. Second, the date of first publication in the '059 Registration is listed as March 1, 1987 (Corretjer Dec. Ex. A), which is when Brown first released his musical version of the poem (Corretjer Dec. ¶ 6). But *Boricua en la Luna* is an unpublished work. (Suarez Dec. Ex. A, No. 14 (at 12)).

37. The errors contained in the '059 Registration were not made with knowledge but rather were based on Consuelo's prior erroneous belief that *Boricua en la Luna* was completed in 1981, which was based on a 2020 interview with Brown where Brown stated that the poem was completed in that year (Suarez Dec. Ex. C at 1), and the misunderstanding that Brown's unauthorized publication of the musical version of the poem constituted the date of first publication for purposes of the application to register the copyright. (Corretjer Dec. ¶¶ 6-7).

38. The '275 Registration contains two errors. First, the '275 Registration lists a completion date of 1979 whereas "Andando de Noche Sola" was created on November 5, 1950; "Ayuburi" was created before 1957; "Boricua en la Luna" was created on December 12, 1980; "Dia Antes" was created before 1967; "Diana de Guilarte" was created before 1964; "Distancias" was created on March 9, 1951; "El Hijo" was created before 1957; "En la vida todo es ir" was created before 1957; "Inriri Cahuvial" was created before

1957; and “Oubao Moin” was created before 1952. (*Compare* Suarez Dec. Ex. F *with* Suarez Dec. Ex. A, No. 13 (at 11)).

39. Second, the ‘275 Registration lists a date of first publication as February 18, 1979, whereas “Boricua en la Luna” is unpublished; “Ahora me despido,” “Andando de Noche Sola,” “Ayuburi,” “Distancias,” “El Hijo,” “En la vida todo es ir,” and “Inriri Cahuvial” were subject to limited publication in 1957; “Dia Antes” was subject to limited publication in 1967; and “Diana de Guilarte” and “Inabon Yunes” were subject to limited publication in 1972. (*Compare* Suarez Dec. Ex. F *with* Suarez Dec. Ex. A, No. 14 (at 11-12)).

40. The errors contained in the ‘275 Registration were not made with knowledge but rather were inadvertently included based on LAMCO’s misunderstanding of USCO registration practices, rules, and conflicting USCO guidance at the time. (Bernard Dec. ¶¶ 3-5).

41. Corretjer died in 1985. (ECF 48 ¶17; ECF 48 ¶ 17).

42. Corretjer died intestate, which led to court proceedings in Puerto Rico for a judicial declaration of heirship. (Suarez Dec. ¶¶ 10-11, Ex. G (LAMCO00092-105 at 098-100)).

43. A court in Puerto Rico granted the petition and declared that Corretjer’s three children Maria Soledad Corretjer Ruiz, Ricardo Diego Corretjer Ruiz, Consuelo Roberta Corretjer Lee, and his widow, Consuelo Lee Tapia, were the Corretjer’s sole and exclusive heirs. (*Id.*).

44. Maria Corretjer, one of the lawfully declared Corretjer heirs, assigned her ownership rights in and to the Corretjer Works to LAMCO, via a written assignment dated August 21, 1999 (the “Assignment”). (Suarez Dec. Ex. G at 0101-105); Suarez Ex. A, No. 4 (at 5)).

45. The Assignment was recorded with the USCO. (Suarez Dec. Ex. G at 092)).

46. In the aforementioned recorded Assignment, *Inabón Yunez* appears under its previous title, *En las Aguas del Inabón, el Nombre*. (*See* Bernard Dec. ¶ 7).

47. Consuelo Corretjer is one of Corretjer's daughters. (ECF 44 ¶ 11; ECF 48 ¶ 11).

48. The same 1992 court ruling concerning a declaration of heirship applies to Consuelo's claim to inheritance (Suarez Dec. Ex. G at 098-100).

49. Consuelo Corretjer inherited an interest in the Corretjer works by way of intestate succession under Puerto Rico law. (*Id.*; ECF 44 ¶ 11; ECF 48 ¶ 11).

50. Consuelo did not assign her copyrights to LAMCO or anyone else. (Corretjer Dec. ¶ 8; Suarez Dec. Ex. A, No. 5 (at 5-6).).

51. Brown copied the Corretjer Works to create lyrics for the Brown Songs, each of which is a musicalized version of the corresponding Corretjer poem and is therefore a derivative work (as an "adaptation"). (ECF 44 ¶¶ 24, 44; ECF 48 ¶¶ 24, 44; Sholder Dec. ¶ 7, Ex. A (Brown Answers to LAMCO Interrogatories, No. 5 (at 3)).

52. Brown had access to the Corretjer Works. (ECF 44 ¶ 43; ECF 48 ¶ 43).

53. The lyrics of the Brown Songs and the words of the corresponding Corretjer Works (as poems) are identical (or, at a minimum, nearly identical). (Sholder Dec. Ex. A, No. 5 (at 3)); Suarez Dec. ¶ 12, Ex. H).

54. Brown sells the Brown Songs on his website, has posted videos of the Brown Songs on YouTube, and has publicly performed the Brown Songs, all within the last three years. (ECF 44 ¶¶ 48, 49, 50; ECF 48 ¶¶ 48, 49, 50).

55. Brown did not receive permission to prepare these derivative works or otherwise exploit them. (ECF 44 ¶¶ 25, 45, 51; ECF 48 ¶¶ 25, 45, 51; Sholder Dec. Ex. F, No. 10 (at 9)).

56. Brown did not receive permission from Corretjer, his heirs, or LAMCO to print the Corretjer Works as song lyrics in physical album media or to reproduce them on his website. (ECF 44 ¶ 51; ECF 48 ¶ 51).

57. Brown has not paid Corretjer's heirs or LAMCO for his exploitation of the Corretjer Works. (ECF 44 ¶ 27; ECF 48 ¶ 27).

Dated: January 30, 2026

Respectfully Submitted,

**COWAN DEBAETS ABRAHAMS & SHEPPARD, LLP**
Scott J. Sholder *(admitted pro hac vice)*
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: (212) 974-7474
Fax: (212) 974-8474
ssholder@cdas.com

**DMR Law**
Javier Micheo Marcial
USDC-PR No. 305310
Capital Center Building
239 Arterial Hostos Avenue
South Tower – Suite 1101
Hato Rey, P.R. 00918
787-331-9970 / 786-710-8138
j.micheo@dmrpr.com

*Attorneys for Counterclaim-Plaintiffs*