**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**ROY BROWN**,
Plaintiff,

v.

**LATIN AMERICAN MUSIC CO.**,
Defendant.

**CIVIL CASE NO.**: 3:24-cv-01523 (MAJ)

**COUNTERCLAIM-PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT: Comes now Counterclaim-Plaintiffs Latin American Music Co. ("LAMCO") and Consuelo Corretjer ("Consuelo"; together with LAMCO, "Counterclaim-Plaintiffs"), through the undersigned attorney, and respectfully states and prays:

## PRELIMINARY STATEMENT

Plaintiff Roy Brown's ("Brown" or "Plaintiff") opposition to Counterclaim-Plaintiffs' motion for summary judgment rehashes already-debunked arguments regarding general publication of the Corretjer Works with no additional support aside from improperly introduced "evidence" in the form of Exhibits A through F, appended to Brown's Counterstatement of Facts (ECF 77-1–7). As discussed at length in Counterclaim-Plaintiffs' accompanying Reply Counterstatement of Facts, Brown's belated exhibits were not produced in discovery and are inadmissible for lack of foundation, authentication, and/or reliability. (*See* LAMCO Reply SUF, filed herewith). Brown also fails to rebut Counterclaim-Plaintiffs' arguments that Corretjer's alleged permission to Brown to put *Boricua en la Luna* to music is inadmissible hearsay. Instead, he relies on the so-called "verbal acts" rule, but as explained below, this rule is wholly inapplicable in this case, and so there is no dispute that the decades-old statement by the long-deceased Corretjer is inadmissible. Finally, Brown attempts to exclude LAMCO's interrogatory answers appended to

the declaration of Alberto Suárez (ECF 74-12), but he is again mistaken as a matter of evidence. Mr. Suárez properly signed LAMCO's interrogatory answers as a representative of the company, and as such, was not obligated to have personal knowledge of every fact stated therein.

## ARGUMENT

### I. BROWN STILL FAILS TO ESTABLISH GENERAL PUBLICATION

*First*, Plaintiff argues that LAMCO's limited publication argument fails because it has not demonstrated that distribution of the Corretjer Works was only to a "definitely selected group" for a "limited purpose" without the right of diffusion, reproduction, distribution or sale. Plaintiff erroneously argues that LAMCO's reference to a very particular and limited set of individuals associated with Corretjer fails to establish a concrete, ascertainable group for purposes of limited publication. However, as stated in LAMCO's initial brief, the definitively selected group element required under *White v. Kimmell* does not demand an exhaustive list of specific individuals. 193 F.2d 744, 746-47 (9th Cir. 1952). Courts have recognized that limited publication can occur through distribution to defined categories of people sharing particular characteristics or relationships. *See, e.g.*, *Letter Edged in Black Press, Inc. v. Pub. Bldg. Comm'n of Chicago*, 320 F. Supp. 1303, 1309 (N.D. Ill. 1970) ("For example, if an artist shows a painting to a selected group of his friends, for the limited purpose of obtaining their criticism, the publication will be said to be limited and thus not divestive of the artist's common law copyright."). The political and cultural context of Puerto Rico during the periods at issue created natural boundaries around distribution. The Corretjer Works were shared within specific intellectual and political circles that constituted a "definitely selected group" under the meaning of *White v. Kimmell*, as they were united by common interests and political alignments that clearly differentiated them from the public. *White*, 193 F.2d at 146.

*Second*, Plaintiff attempts to argue that the Corretjer Works were subject to general publications because some were discussed in literary magazines and reviewed by newspapers and literary publications. However, these arguments are all misguided. The mere fact that Corretjer Works may have received limited critical attention or does not establish general publication.

*Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.* is instructive. 944 F.2d 1446 (9th Cir. 1991). In that case, the Ninth Circuit reversed a finding of general publication as to the Oscar award statue, notwithstanding significant press coverage and promotional benefits that it brought the Academy. *See id*. at 1452. The court found that the Oscar statue was distributed to a limited number of people (i.e., award winners), for a limited purpose (i.e., as trophies for winning an Academy Award). *Id.* at 1452-53. Moreover, the statue was distributed with *implied* restrictions on further distribution; the court explained that while "the Academy did not expressly prohibit recipients from selling or disposing of their Oscars . . . neither the Academy nor any living Oscar recipient has ever offered to transfer an Oscar to the general public;" each Oscar is personalized with the name of the winner; and the Academy "has never given them permission to [winners to] sell or distribute their Oscars," nor has it done anything "to suggest that recipients are free to make copies of the Oscars and distribute them." *Id*. at 1454. Moreover, the fact that the statue was publicly displayed and presented at an award ceremony did not divest the award of common law copyright protection, and it did not matter that pictures of the Oscar statue had been published in books, newspapers, and magazines. *Id.*

The same reasoning applies in this case. The Corretjer Works could still receive critical attention while maintaining Corretjer's implied yet clearly understood distribution restrictions. As established in *Academy*, the key factor is not whether works were reviewed or publicized, but whether unrestricted copies were placed into public circulation without retained control. *Id.* As in

that case, the reviews Brown cites merely show awareness of the Corretjer Works' existence by critics, journalists, and commentators, not their distribution method. *See, e.g.*, *Jerome v. Twentieth Century Fox Film Corp.*, 67 F. Supp. 736, 739 (S.D.N.Y.) (advance distribution of the work to the trade or for review does not constitute publication, and distribution of copies to a limited number of professional artists to "render" in public represents a limited rather than general distribution).

*Third*, Plaintiff's argument that using commercial printers somehow makes the Corretjer Works subject to divestive general publication is a red herring. As a threshold matter, Plaintiff provides no basis for his assumption that the selection of a *printer* has anything to do with how a work is *published*, and even if choice of printers was relevant (it is not) Plaintiff ignores the fact that there is no plausible reason why works subject to limited publication could not also use commercial printers. (*See* Reply SUF ¶ 20). The key factor is whether the Corretjer Works were placed into the public circulation without limits. As established in Counterclaimants' motion for summary judgment, the Corretjer Works were not. (*See* ECF 74 at 8-13).

Relatedly, Plaintiff claims that the Corretjer Works were published in Mexican and French publications[1] but provides no evidence to support this claim. (*See* ECF 77 at 12). While this should disqualify Plaintiff's argument outright, Plaintiff makes an additional error. Plaintiff assumes that simply because foreign publications received copies of selected Corretjer Works and reviewed or discussed them, then they must have been generally circulated without any restrictions and that all such distributions must have been authorized. Plaintiff offers no evidence to substantiate this assumption and completely ignores the fact that unauthorized general publication by third parties does not divest copyright protection by injecting a work into the public domain. *See Soc'y*

---

[1] Brown's claim that Corretjer Works were published in "French literary magazines" is an overstatement. Brown's Exhibit F is a partial copy of a single edition of a French academic journal dedicated to Puerto Rican literature, which was published in Spanish. (*See* Suárez Reply Dec. ¶ 6; Reply SUF at 18).

*of the Holy Transfiguration Monastery, Inc. v. Archbishop Gregory of Denver, Colorado*, 754 F. Supp. 2d 219, 225 (D. Mass. 2010), *aff'd sub nom. Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29 (1st Cir. 2012). Further, "mere performance or exhibition of a work does not constitute a publication of that work," *Am. Vitagraph, Inc. v. Levy,* 659 F.2d 1023, 1027 (9th Cir. 1981); *see also Open Source Yoga Unity v. Choudhury*, 2005 WL 756558, at *6 (N.D. Cal. Apr. 1, 2005), particularly where performance or exhibition is by a third party without the author's knowledge. *Cipes v. Mikasa, Inc.,* 346 F.Supp.2d 371, 375 (D. Mass. 2004).

Plaintiff attempts to use *Patterson v. Century Prods.* to support the argument that Corretjer did not exercise complete control over the dissemination of the Corretjer Works and thus could not have engaged in limited publication. 93 F.2d 489 (2d Cir. 1937). However, this case is distinguishable because *Patterson* involved a work subject to a limited license and this case does not. *See id.* Additionally, Plaintiff cites *Paramount Pictures Corp. v. Leslie Rubinowitz* to support the proposition that Corretjer must have had to exercise complete contractual control over the works to establish limited publication. 1981 WL 1396 (S.D.N.Y. 1981). But Plaintiff fails to recognize or acknowledge that while contractual control over the works is helpful in establishing limited publication, it is not necessary, and courts have found limited publication where only implied restrictions on distribution were in place. *See, e.g.*, *Burke v. Nat'l Broad. Co.*, 598 F.2d 688, 692 (1st Cir. 1979) ("While the distribution must be so restricted, however, the restrictions can be implied as well as express.); *Acad. of Motion Picture Arts & Scis.*, 944 F.2d at 1453 ("Although no express restrictions on recipients' use or distribution of the Oscar existed before 1941, we conclude that restrictions on further distribution were implied."); *Kramer v. Newman*, 749 F. Supp. 542, 549 (S.D.N.Y. 1990) ("[R]estrictions [on publication] may be express or implied.").

*Finally*, Plaintiff regurgitates the same arguments used in both of his motions for summary judgment regarding some of the Corretjer Works appearing in reviews in *El Mundo*, *Puerto Rico Illustrado*, *Artes y Letras*, and *Mensuario de Cultura*. Counterclaimants incorporate as if set forth fully here in all of their prior counterarguments. (*See* ECF 79 at 13-14; ECF 80 at 12-14).

## II. BROWN CONCEDES NO HEARSAY EXCEPTION APPLIES AND MISAPPREHENDS THE "VERBAL ACTS" DOCTRINE

Brown argues that Counterclaim-Plaintiffs misapprehend the hearsay rule, but it is he who misapprehends Counterclaim-Plaintiffs' arguments. As a threshold matter, and as further set forth in Consuelo's opposition to Brown's own motion for summary judgment, Counterclaim-Plaintiffs do not simply rely on Fed. R. Evid. 804(a)(4) as the "ground for exclusion," as Brown claims. (ECF 77, at 19.) Rather, Counterclaim-Plaintiffs rely on the hearsay doctrine generally, Fed. R. Civ. 801, and argue that Brown cannot demonstrate that any exception applies, as is his burden. (ECF 80, at 15-19.) Conceding that no exception applies, Brown instead relies on the "verbal acts" doctrine. (ECF 77, at 19.) But such reliance is misguided and only serves to underscore precisely why the statement is inadmissible hearsay.

As Brown himself recognizes, the "verbal acts" doctrine provides that words which themselves have legal effect are not hearsay. (*Id.*) But the reason such a statement is not hearsay is because it is not being offered for its truth, as its significance lies "solely in the fact that it was made." *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 565 (D. Md. 2007). In other words, communications between parties carry independent legal significance where they "define the terms of a contract, or prove its content," and are thus not being offered for their truth. *Id.* (citing cases).

Here, there can be no reasonable dispute that the statement, "[t]his is something you should set to music," does not carry any express contract terms, and certainly no contractual terms that even remotely relate to Brown's ongoing commercial exploitations of *Boricua en la Luna* that are

at issue here.[2] By itself, no legal consequences flow from the statement. Rather, any legal consequences necessarily flow by considering the statement for its truth. Brown readily admits this when he characterizes the statement not as a binding contract, but as an "expressed wish" by Corretjer that Brown "put [*Boricua en la Luna*] to music." (ECF 71, at 2.) In other words, Brown is offering the statement that Corretjer told Brown to set *Boricua en la Luna* to music to prove precisely what Corretjer purportedly said: that Brown should set *Boricua en la Luna* to music. The "verbal acts" doctrine is not a talisman for proving consent in place of actual contract terms. *See ABKCO Music, Inc. v. Sagan*, 2018 WL 1746564, at *13 & n.25 (S.D.N.Y. Apr. 9, 2018) (agreement with record labels purporting to grant exploitation in recordings could not be used as proof that artists actually consented to fixation of the recordings).

Brown cites authority for the basic proposition that a contract is not hearsay under the "verbal act" doctrine, but again, this is because "legal consequences flow from the fact that the words were said, *e.g.* the words of offer and acceptance which create a contract." *Preferred Props., Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 798 n.5 (6th Cir. 2002). Brown tries to stretch his own caselaw to include "words of . . . consent, or authorization" rather than the required contractual words of offer and acceptance (ECF 77, at 19), but the cases on which Brown relies—which involved express contracts with offer and acceptance, not statements being used to prove implied consent—do not support Brown's broad reading of the doctrine. Contrary to Brown's characterizations, "it is not enough to simply characterize a statement as an offer. Only 'utterances by the parties . . . constituting the offer and acceptance *which brought the contract into being*'

[2] Brown continues to assert that he was "authorized to put [*Boricua en la Luna*] to music," (ECF 77, at 18), but this sidesteps the larger issue: Brown has admittedly exploited *Boricua en la Luna* as if he held a worldwide, royalty-free license to commercially reproduce, distribute, and publicly perform *Boricua en la Luna*. (ECF 48, admissions in reply to Counterclaims ¶ 27, 48-51.) To avoid liability for infringement, it is Brown's burden to demonstrate the existence of a license that covers such uses. Whether Brown was entitled to set *Boricua en la Luna* in the first place is essentially beside the point.

qualify as verbal acts." *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1087 (10th Cir. 2001). *Cf. Real Estate Data, Inc. v. Sidwell Co.*, 809 F.2d 366, 375 (7th Cir. 1987) ("'Verbal acts' may, of course, come in as an exception to the hearsay rule. However, the question in this case involves the intent of the parties . . . . This evidence can at best only show a unilateral assumption . . . not an agreement between the parties on the copyrights.").

Finally, Brown's misguided attempts to bolster the "evidentiary weight" of the statement by offering other evidence intended to corroborate it (ECF 77, at 20-22) further serves to demonstrate that the statement is hearsay. The reason the "verbal acts" doctrine allows contracts to be admitted is because their significance ***does not depend on credibility***. *See Lorraine*, 241 F.R.D. at 565 ("Thus, if a declarant's statement is not offered for the truth, the declarant's credibility is not material, and the statement is not hearsay."). Brown's need to offer corroborating evidence, to prove that Corretjer meant what he said, is a tacit concession that the statement does not carry independent legal significance, as a "verbal act" would, and that he is instead offering the statement for the truth of the matter asserted.

## III. SUÁREZ'S INTERROGATORY ANSWERS ARE ADMISSIBLE BECAUSE SUÁREZ IS A CORPORATE REPRESENTATIVE FOR LAMCO

Plaintiff argues that ECF 74-13, LAMCO's Interrogatory Answers (Exhibit A to the Declaration of Alberto E. Suárez Romero) are inadmissible at summary judgment under Federal Rule 56(c)(4) because the statement, given by LAMCO's Copyright & Catalog Administrator Mr. Suárez, is not based on his personal knowledge. (*See* ECF 77 at 7-10). However, Plaintiff conveniently ignores the fact that Suárez was clearly acting as an authorized corporate representative of LAMCO under Federal Rule 33, not in his own personal capacity, and his answers were therefore based on LAMCO's company knowledge rather than his own. (*See* Suárez Reply Dec. ¶¶ 7-8). For this reason, the Court may properly consider the Interrogatory Answers.

Federal Rule 33(b)(1)(B) expressly states that interrogatories directed to a corporate party—in this case, LAMCO—must be answered "by any officer or agent, who must furnish the information available *to the party.*" Fed. R. Civ. P. 33(b)(1)(B) (emphasis added). The rule does not mandate that corporate interrogatory responses be made on personal knowledge. *See Suzuki v. Abiomed, Inc.*, 943 F.3d 555, 565 (1st Cir. 2019) (corporate officer's answers on behalf of his company, based on information available within his company, were valid even though he lacked personal knowledge); *Gonzalez Tomasini v. United States Postal Serv.*, 2020 WL 13490911, at *1 (D.P.R. July 24, 2020) ("[A] corporate party or government agency may designate a person to answer interrogatories even though that person lacks personal knowledge of the matters covered in the answers."). Rather, Rule 33 "expressly permits a representative of a corporate party to verify the corporation's answers without personal knowledge of every response by 'furnish[ing] such information as is available *to the party*.'" *Shepherd v. Am. Broadcasting Cos., Inc.*, 62 F.3d 1469, 1482 (D.C. Cir. 1995) (emphasis added). *See also Clark v. Newman Univ., Inc.,* 2022 WL 4130828, at *6 n.3 (D. Kan. Sept. 12, 2022) (corporate agent's interrogatory answers admissible even absent her personal knowledge).

Here, it was perfectly appropriate for Mr. Suárez to sign LAMCO's interrogatory answers based on company, organizational, or institutional knowledge. As the Copyright & Catalogue Administrator for LAMCO, he was authorized to serve as a corporate representative for LAMCO, certifying the answers "under penalty of perjury that the foregoing is true and correct" "based on the information available to and/or shared with [him]" *by LAMCO* (ECF 74-13 at 22; *see also* Suárez Reply Dec. ¶¶ 7-8)). And, as a practical matter, there are no witnesses with contemporaneous knowledge from the era in which the relevant events took place, so LAMCO is permitted to rely on institutional knowledge to prove its case. *See Vertical Bridge Dev., LLC v.*

*Town of Westlake, Texas*, 790 F.Supp.3d 529, 531-532 (E.D. Tex. 2025) (Town Manager's verification of interrogatory answers appropriate even though some events predated his tenure).

For purposes of verification, corporate representatives must only have a basis for stating that the responses are accurate, which can be achieved through internal processes, including discussions with counsel, *see Shepherd*, 62 F.3d at 1482; review of corporate records, *see Vertical Bridge Dev., LLC v. Town of Westlake, Texas*, 790 F. Supp. 3d 529 (E.D. Tex. 2025); and consultation with knowledgeable employees and general awareness of relevant company procedures, *see Abrams v. Ciba Specialty Chemicals Corp.*, 265 F.R.D. 585, 588 (S.D. Ala. 2010). Here, Mr. Suárez's institutional knowledge is permissibly derived from his professional role at LAMCO managing LAMCO's copyrights and accessing LAMCO's company records "available to and/or shared" with him (ECF 74-13 at 22; Suárez Reply Dec. ¶ 8).

Finally, Mr. Suárez states that the answers are "true to the best of my knowledge and belief *based on information available to and/or shared with me*," (ECF 74-13 at 22 (emphasis added)), which is sufficient as a matter of law. *See, e.g.*, *Gonzalez Tomasini*, 2020 WL 13490911, at *1 (paralegal properly answered interrogatories for company where information was collected and made available by others); *Diaz-Nieves v. United States*, 128 F. Supp. 3d 449, 453 (D.P.R. 2015), aff'd, 858 F.3d 678 (1st Cir. 2017) (interrogatory answers by government agent proper where sworn "to the best of [his] knowledge and records."); *Shulin v. Werner Enters.*, 2017 WL 10379225, at *5 (N.D. W. Va. Aug. 11, 2017) ("the person answering may verify its interrogatory responses on the basis of knowledge, information, and belief").

## CONCLUSION

The Court should grant summary judgment in favor of Counterclaim-Plaintiffs and find Brown liable for copyright infringement.

Dated: March 4, 2026

Respectfully Submitted,

**COWAN DEBAETS ABRAHAMS & SHEPPARD, LLP**
Scott J. Sholder *(admitted pro hac vice)*
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: (212) 974-7474
Fax: (212) 974-8474
ssholder@cdas.com

**DMR Law**
Javier Micheo Marcial
USDC-PR No. 305310
Capital Center Building
239 Arterial Hostos Avenue
South Tower – Suite 1101
Hato Rey, P.R. 00918
787-331-9970 / 786-710-8138
j.micheo@dmrpr.com

*Attorneys for Counterclaim-Plaintiffs*