**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **ROY BROWN**,<br>Plaintiff,<br><br>v.<br><br>**LATIN AMERICAN MUSIC CO.**,<br>Defendant. | **CIVIL CASE NO.**: 3:24-cv-01523 (MAJ) |

**COUNTERCLAIM-PLAINTIFFS' SURREPLY IN FURTHER OPPOSITION TO BROWN'S MOTIONS FOR SUMMARY JUDGMENT (DKT. NO. 95)**

TO THE HONORABLE COURT: Comes now Defendant/Counterclaim-Plaintiff Latin American Music Co. ("LAMCO") and Counterclaim-Plaintiff Consuelo Corretjer ("Consuelo", collectively with LAMCO, "Counterclaim-Plaintiffs") through the undersigned attorneys, and respectfully state and pray as follows:

## ARGUMENT

### I. THE DERIVATIVE WORKS EXCEPTION DOES NOT ALLOW BROWN'S CONTINUED EXPLOITATIONS OF *BORICUA EN LA LUNA*

Brown's reply memorandum of law (ECF 80) fails to rebut Conseulo's argument that Brown's use of *Boricua en la Luna* is not covered by any license, thereby establishing that he cannot prove the existence of a license. But with respect to Consuelo's alternate argument—that a license was revoked when Consuelo asserted claims, and therefore Brown's ongoing exploitations are infringing—Brown's reply raises an entirely new argument in response, which merits this surreply. *See* Local Rule 7(d).

Brown seeks to invoke Section 203(b)(1) of the Copyright Act, which provides that derivative works prepared under authority of a prior grant "may continue to be utilized under the terms of the grant after its termination." 17 U.S.C. § 203(b)(1). Under this provision, known as the "derivative works exception" to the Copyright Act's allowance of copyright grant termination and recapture, Brown claims he can continue to exploit *Boricua en la Luna* without restriction. (*See* ECF 95 at 8-10.) Section 203, however, is inapplicable here. It relates to specific ***statutory*** termination procedures under the Copyright Act, which provide for the termination of grants made on or after January 1, 1978 "notwithstanding any agreement to the contrary," starting "thirty-five years from the date of execution of the grant." 17 U.S.C. § 203.

The statutory termination right is a right which Congress added to the 1976 Copyright Act in order to provide authors and their heirs the opportunity to "recapture" rights under copyright and avoid "the consequences of ill-advised and unremunerative grants that had been made before the author had a fair opportunity to appreciate the [work's] true value." *Woods v. Bourne Co.*, 60 F.3d 978, 982 (2d Cir. 1995) (citing *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172-73 (1985)). It requires certain statutory pre-requisites to be met, including an "advance notice in writing," signed by those exercising the termination right and conforming to requirements prescribed by the Register of Copyrights, served within a period of time "not less than two or more than ten years" before the date of termination. 17 U.S.C. § 203(a)(4)(A). Statutory termination is inapplicable in this case. As a threshold matter, key statutory requirements are absent here. According to Brown's own narrative, Corretjer supposedly gave him permission to set *Boricua en la Luna* to music in either 1976 or 1977, (ECF 71 at 11; ECF 71-1 ¶¶ 23-25), whereas Section 203 only applies to grants made on or after January 1, 1978. Also, no one claims that the appropriate statutory notice was given within the applicable timeframes.

Accordingly, the license, if it even existed (and it did not), would have been a creature of state contract law. As noted in Counterclaim-Plaintiffs' opposition, the supposed oral implied license involved no consideration and thus could be freely revoked. (*See* ECF 80 at 23.) Brown offers nothing to the contrary aside from a wholly unsupported argument that there was "continuing consideration" in the absence of monetary compensation because Corretjer was "grateful" to Brown for "taking his poems to the heart of Puerto Rico," as evidenced by a passage in a book (ECF 95 at 10). This theory is beyond frivolous, mischaracterizing one of the most fundamental principles of contract formation. *See Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 86 (1st Cir. 2018) (referring to consideration as a "bargained-for exchange") (citing 3 Williston on Contracts § 7:11 (4th ed.)); *Furie v. Infowars, LLC*, 401 F. Supp. 3d 952, 969 (C.D. Cal. 2019) ("[T]o the extent Plaintiff's public statements can be viewed as an offer, Defendants do not explain why there is consideration for an implied license.").

Consuelo was free to terminate the supposed license, and did in fact do so, under state contract law, not federal copyright law. *See Latin Am. Music Co. v. ASCAP*, 593 F.3d 95, 101 (1st Cir. 2010) (rejecting application of 17 U.S.C. § 203 to termination that was effectuated under terms of contract, because termination in such circumstances was governed by state law, not Copyright Act); *see also DC Comics v. Pac. Pics. Corp.*, 545 F. App'x 678, 681-82 (9th Cir. 2013) (noting Congressional history which stated that statutory copyright termination was not "intended to change the existing state of the law of contracts concerning the circumstances in which an author may terminate a license, transfer or assignment" (quoting H.R. Rep. No. 94-1476, at 142)).

Brown refers this Court to *Fred Ahlert Music Corp. v. Warner/Chappell Music, Inc.*, 155 F.3d 17 (2d Cir. 1998), but that case is inapplicable because its discussion of the "derivative works exception" is explicitly within the context of statutory termination, not contractual termination

under state law. But even if it was applicable, the case does not help Brown. On the contrary, the holding of that case—which rejected a similar attempt to invoke the derivative works exception—exposes the critical shortcomings in Brown's implied license theory.

In *Fred Ahlert*, the Second Circuit was faced with the question of whether a music publisher was entitled to collect royalties for a licensed derivative work in connection with its inclusion in a movie soundtrack, after the grant of rights to the underlying song had been terminated. *Id.* at 19-21. Music publisher Warner/Chappell Music, Inc. ("WCM") had been granted rights to the song "Bye Bye Blackbird," and under the terms of the grant, authorized the creation of a derivative recording in 1969. *Id.* In 1982, the grant was terminated, and the rights in the song reverted to the songwriters' heirs, who transferred their interest to a different music publisher, Fred Ahlert Music Corp. ("Ahlert"). *Id.* Ahlert proceeded to license the 1969 derivative for inclusion in the soundtrack to the film "Sleepless in Seattle," and a dispute arose over whether WCM was entitled to ongoing royalties in connection with this use of the 1969 derivative, created while WCM still held the rights.

Invoking the "derivative works exception," WCM argued that the 1969 recording was a derivative work "prepared under authority of the grant before its termination," and therefore, it was entitled to continue to benefit from it after termination. *Id.* at 22. The court disagreed. Emphasizing that such derivative works may only be "utilized under the terms of the grant after its termination," 17 U.S.C. § 203(b)(1), the court determined that the film soundtrack was outside the scope of the grant to WCM that had been terminated, because the 1969 recording had not been authorized for inclusion in a film soundtrack during the term of the grant. *Id.* at 25. Because the terminated grant had not expressly provided for utilization of the 1969 derivative in the film, the derivative work exception was inapplicable.

While termination under 17 U.S.C. § 203, and therefore the "derivative works exception," is not applicable to this case, even if it was, Brown's own cited caselaw directly prohibits the very conduct which Brown is asking this Court to endorse. If a license existed (it did not) and assuming that the "derivative works exception" applies (it does not), Brown would only be entitled to utilize his derivative of *Boricua en la Luna* "under the terms of the grant." 17 U.S.C. § 203(b)(1). Brown has not identified what those terms are because there are none. The only "term" Brown identified is the purported statement that *Boricua en la Luna* is something Corretjer allegedly said he should "set to music." (ECF 71 at 11.) But there is no world in which a 50-year-old statement about potentially setting a poem to music could be construed as a grant of rights to the unlimited commercial distribution and sale of the musicalized poem in various mediums, including over the internet, let alone the reproduction and public display of the poems (as lyrics) in vinyl gatefolds, liner notes, and on Brown's website.

**CONCLUSION**

For the reasons set forth above and in Counterclaim-Plaintiffs' other filings, the Court should deny Brown's motion for summary judgment as against Consuelo.

Dated: March 10, 2026

Respectfully Submitted,

**COWAN DEBAETS ABRAHAMS & SHEPPARD, LLP**
Scott J. Sholder *(admitted pro hac vice)*
60 Broad Street, 30th Floor
New York, New York 10004
Telephone: (212) 974-7474
Fax: (212) 974-8474
ssholder@cdas.com

**DMR Law**
Javier Micheo Marcial
USDC-PR No. 305310
Capital Center Building
239 Arterial Hostos Avenue
South Tower – Suite 1101
Hato Rey, P.R. 00918
787-331-9970 / 786-710-8138
j.micheo@dmrpr.com

*Attorneys for Counterclaim-Plaintiffs*