UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROY BROWN

Plaintiff

v.

LATIN AMERICAN MUSIC CO.

Defendants

CIVIL NO. 24-cv-01523 (MAJ)

COPYRIGHT INFRINGEMENT

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SURREPLY**

TO THE HONORABLE COURT:

COMES NOW Plaintiff Roy Brown, through undersigned counsel, and respectfully responds to the Surreply filed by Counterclaim-Plaintiffs.

## I. THE SURREPLY MISCHARACTERIZES THE STATUTORY FRAMEWORK GOVERNING DERIVATIVE WORKS

The Surreply argues that Plaintiff cannot invoke the derivative works exception because 17 U.S.C. § 203 applies only to grants executed after January 1, 1978, and Plaintiff has testified that the authorization to set Boricua en la Luna to music occurred in 1976 or 1977. This argument misunderstands the structure of the Copyright Act.

The Act contains two parallel termination regimes. Section 203 governs post-1978 grants, while pre-1978 grants are governed by 17 U.S.C. § 304(c). Both provisions contain the same operative rule protecting derivative works. Section 304(c)(6)(A) provides that a derivative work prepared under authority of a grant before termination "may continue to be utilized under the terms of the grant after its termination."

Accordingly, even if the Court were to accept Defendants' premise that authorization occurred before 1978, the governing provision would simply be § 304 rather than § 203. The existence of the derivative works exception therefore does not depend on the post-1978 timing requirement emphasized in the Surreply.

Defendants' own factual theory also undermines their argument. Defendants assert elsewhere that Corretjer provided Plaintiff with the poem in 1981. Under that version of events, the authorization would fall squarely within § 203 and its derivative works exception. Thus, under either timeline advanced by the parties, the statutory framework recognizes the continuing exploitation of derivative works prepared pursuant to an authorized grant.

II. THE SURREPLY MISCONSTRUES THE ROLE OF STATUTORY TERMINATION

The Surreply further contends that the derivative works exception is irrelevant because no statutory termination under § 203 occurred and any license would instead be governed solely by state contract law. This argument misconstrues the statute.

The derivative works exception does not depend on the procedural mechanics of termination. Rather, it defines a category of derivative works that remain protected even after termination of the underlying grant. The Supreme Court explained in <u>Mills Music, Inc. v. Snyder</u>, 469 U.S. 153 (1985) that the exception preserves the continued utilization of derivative works that were prepared pursuant to authorized grants before termination.

The Court emphasized that the relevant inquiry concerns the scope of the authorization and the timing of the derivative work's creation, not the formal characterization of the termination mechanism.

Defendants' attempt to avoid the derivative works exception by labeling the alleged revocation as "contractual" rather than "statutory" therefore misses the point. The statute identifies which derivative works remain protected once the underlying authorization ceases; it does not condition that protection on whether the underlying relationship ended through statutory recapture or contractual termination.

## III. THE SUPREME COURT'S DECISION IN MILLS MUSIC CONTROLS THE ANALYSIS

The Surreply also misconstrues the scope of the derivative works exception. In Mills Music, Inc. v. Snyder, supra, the Supreme Court held that derivative works created pursuant to an authorized grant remain exploitable after termination because the statute preserves their continued use "under the terms of the grant."

The Court explained that the boundaries of the derivative works exception are determined by two factors: (1) the scope of the authorization granted for the derivative work, and (2) the time the derivative work was prepared.

The Court further rejected attempts to narrow the exception based on the structure of licensing relationships, emphasizing that the statute does not distinguish between direct authorizations and more complex licensing arrangements.

Under that framework, the relevant inquiry here is straightforward: whether Plaintiff's musical composition was created pursuant to authorization from Corretjer and whether that derivative work existed prior to the alleged termination.

## III. A MUSICAL SETTING OF A POEM IS A CLASSIC DERIVATIVE WORK

The work at issue here falls squarely within the statutory definition of a derivative work. The Copyright Act expressly defines a derivative work as a work "based upon one or more preexisting works," including a work in which the original work is "recast,

transformed, or adapted." A musical setting of a literary text is a paradigmatic example of such an adaptation.

Plaintiff's composition of Boricua en la Luna transformed Corretjer's poem into a musical work, thereby creating a new work of authorship built upon the underlying literary text. Once such a derivative work is prepared pursuant to authorization, the statute preserves the right to continue exploiting that work, even if the underlying authorization later terminates.

Defendants' suggestion that a statement inviting Plaintiff to "set [the poem] to music" could not authorize the resulting musical composition ignores the very nature of derivative works in the music and literary fields. The derivative work exception exists precisely because creative adaptations—such as songs based on poems—often take on lives of their own once created.

## IV. THE SURREPLY MISREADS THE "TERMS OF THE GRANT" REQUIREMENT

Finally, the Surreply argues that even if the derivative works exception applied, Plaintiff's uses exceed the "terms of the grant" because the alleged authorization did not expressly address commercial distribution or later forms of dissemination.

The Supreme Court rejected precisely this type of narrow reading in <u>Mills Music</u>. The Court held that once a derivative work is prepared under authority of a grant, the statute preserves the continued utilization of that work according to the arrangements governing its exploitation.

The derivative works exception thus protects the continued exploitation of the derivative work itself. It does not require that every conceivable downstream use be specifically enumerated at the moment the authorization was granted.

Here, the derivative work at issue is Plaintiff's musical composition of Boricua en la Luna. The Surreply does not dispute that this composition has existed and been performed publicly for decades. The statute therefore concerns the continued utilization of that preexisting derivative work, not the creation of new derivative works after termination.

CONCLUSION

For the foregoing reasons, the statutory argument advanced in Defendants' Surreply misinterprets the derivative works exception and does not defeat Plaintiff's reliance on that doctrine.

WHEREFORE, Plaintiff respectfully requests that the Court reject the arguments raised in Defendants' Surreply and grant Plaintiff's motion for summary judgment.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 16 March 2026.

**s/ Patricia Rivera MacMurray**
Patricia Rivera MacMurray
USDC 222309
E-mail: prm3@mac.com
250 Tetuán, San Juan, PR 00901
Tel. 787 607-3700

I HEREBY CERTIFY that on this date, I electronically filed the foregoing using the CM/ECF system, which will send a notification to all parties in the case.

**s/ Patricia Rivera MacMurray**